UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MARCEL VINES,**<br><br>Defendant. | **Crim. Case No. 24-CR-520-3** |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

While the defendant, Marcel Vines, was awaiting trial for Kidnapping and Murder, he was conspiring with fellow detainees, correctional officers, and civilians outside the jail to smuggle a knife, dangerous drugs including Fentanyl, and cellular phones into the Central Detention Facility. An audit of the D.C. Jail during the period of Mr. Vines' offense found the rate of overdose deaths at the facilities to be 10 times the national average at U.S. jails. Ex. 1. During the audit period, there were also 76 incidents of contraband drugs recovered and Narcan was administered 148 times. *Id*. These numbers are shocking and underscore the seriousness of Mr. Vines' actions. Mr. Vines was sentenced to a life sentence plus an additional sixty years in 19-CR-166 (DLF). Given his criminal history and the seriousness of this offense, and in consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court should sentence him to 46 months incarceration to run consecutively to his current sentence.

I.   **Background**

From October 16, 2018, through the period of the instant offense, Mr. Vines was incarcerated in the Central Detention Facility ("CDF") of the D.C. Department of Corrections ("DOC") awaiting trial on double-armed kidnapping and murder charges. During the relevant period, Mr. Vines was incarcerated in either the Northwest-1("NW-1") or Southwest-1 ("SW-1")

housing units, which are maximum security units at CDF. During this period, Mr. Vines was housed with other detainees from the Clay Terrace neighborhood of Washington D.C., to include Darius Robertson and Stefon Freshley (collectively with Mr. Vines, the "Clay Terrace Detainees").

Beginning by at least February 18, 2024—but likely much earlier—the Clay Terrace Detainees sought to bring dangerous contraband including weapons and controlled substances into CDF. They recruited Correctional Officer Rashaad Roper and Kiya Holland—a close confidant of Mr. Robertson—to assist in bringing the contraband into the jail. On February 18, 2024, Ms. Holland left a bag containing two Tupperware containers filled with contraband on a table at the staff entrance to CDF. About an hour later, Officer Roper went to the staff entrance and grabbed the bag left by Ms. Holland. Officer Roper took the Tupperware containers through the security screening room. Officer Roper placed the bag through the x-ray machine but there was no correctional officer monitoring the screen as the bag passed through. Officer Roper took the two Tupperware containers to the employee locker room, where he left them for the night.

The next day, on February 19, 2024, Officer Roper went to his locker and transferred the contraband from the Tupperware to a white Styrofoam food container. He then brought the container into NW-1 and set the container on a pushcart with two large yellow and red coolers on it inside an empty hallway. Minutes later, the Clay Terrace Detainees entered the hallway, and Mr. Vines took possession of the container containing the contraband.





Mr. Vines then brought the food container into his jail cell, followed by Mr. Robertson and Mr. Freshley.

Officer Roper did not return to work until February 26, 2024. That day, Officer Roper returned to the employee locker room. He retrieved the other Tupperware container and transferred contraband from that container into another white disposable food container. He then met with Mr. Vines inside a room near the NW-1 correctional officer security post.



Mr. Vines took the disposable food container containing contraband and walked with it into his assigned cell.

On February 28, 2024, at approximately 10:56 a.m., Ms. Holland returned to CDF with another bag containing two Tupperware containers. She left the bag on the same table for Officer Roper. However, before Officer Roper could retrieve the containers for the Clay Terrace Detainees, the bag was intercepted by DOC Office of Investigative Services. Collectively, the containers contained: (1) one switchblade knife; (2) one Apple iPhone; (3) a white USB iPhone charger; (4) two pairs of eyeglasses; (5) a bundle of marijuana wrapped in clear saranwrap; (6) tobacco wrapped in clear saranwrap; (7) several sheets of white rolling papers; (8) a pair of gambling dice; (9) three white sheets of bonded paper that were damp and contained MDMB-4en-PINACA—a Schedule I Controlled Substance,; (10) two saran-wrapped packages of marijuana; and (11) five individually wrapped packages in clear saranwrap containing approximately 100 cigarettes. Officer Roper was placed on administrative leave.

With Officer Roper out of the unit and on administrative leave, Mr. Vines and the other Clay Terrace Detainees sought to recruit a new officer to smuggle contraband into CDF. Four months later, they found their man in Officer Bryan Kinard. On June 30, 2024, July 7, 2024, and July 21, 2024, Officer Kinard obtained Tupperware containers filled with food from Ms. Holland

or LaTara Brown outside the jail and brought them to Stefon Freshley inside CDF. Concealed inside the food was contraband. Each incident was captured on surveillance footage, and the July 21st incident was captured on Officer Kinard's body-worn camera. Officer Kinard can be seen on the July 21st video with audio: (1) providing his license plate number to the Clay Terrace Detainees so that their associate outside the jail could drop the contraband in Officer Kinard's vehicle; (2) coordinating with the Clay Terrace Detainees as to when they would like him to take his break and obtain the contraband from his vehicle; and (3) providing the contraband to Mr. Vines and then Mr. Freshley and describing the "heavy" weight of the Tupperware container.

Two days after the July 21st smuggling incident, two photographs were posted from Mr. Freshley's known Instagram account, "___steflover" despite the fact that he was detained at CDF.[1] The first photograph was a picture of Mr. Vines and his co-defendant in the courtroom during jury selection of their murder trial before Judge Friedrich that had begun days earlier. The second photograph was a black screen overlayed with text, stating "It ain't going to be safe telling on them Boyz [emojis]."

---

[1] Of note, the profile picture for the "___steflover" account is a photograph of Freshley and Vines, which appears to have been taken inside the D.C. jail.



That post prompted significant new security measures at the courthouse. Additionally, it prompted law enforcement to review surveillance footage from the jail and eventually to identify Officer Kinard as the individual smuggling items in on behalf of the Clay Terrace Detainees.

On July 25, 2024, DOC conducted two searches of the Clay Terrace Detainee's unit for contraband. Inside NW-1, DOC staff found, among other things, approximately: (1) 269 blue pills (including 120 from Mr. Vines' cell), which tested positive for fentanyl; (2) 60 cigarettes soaked in an unknown liquid (including 40 in Mr. Vines' cell); (3) 255 suboxone strips (170 in Mr. Vines' cell); (4) 7 pieces of paper soaked in an unknown liquid substance; (5) three cellular phones; and (6) cigarettes.

## II.     Sentencing Guidelines

The parties agree that the following guidelines apply.

| | |
|---|---|
| U.S.S.G. § 2D1.1(a)(5) (Cross-Reference from 2P1.2(c)) – Base Offense – 8 to 16 grams of Fentanyl | 16 |
| U.S.S.G. § 2D1.1(b)(4) Object of offense – distribution of a controlled substance in a prison | 2 |

Acceptance of Responsibility                                                          -3

                                                                                                                                   Total         15

The defendant is in Criminal History Category of 11 for the following criminal convictions:

| Charge/Court | Disposition Date and Sentence | U.S.S.G. § | Criminal History Pts. |
|---|---|---|---|
| Murder/Kidnapping Resulting in Death/924(c) – DDC – 19-CR-166-DLF | 3/7/2025 – Mandatory Life | 4A1.1(a) | 3 |
| Escape – DDC – 18-CR-42 | 7/12/2018 – 10 months | 4A1.1(b) | 2 |
| PWID-PCP/FIP – DCSC – 2015-CF2-15181 | 6/17/2016 – 18 months | 4A1.1(a) | 3 |
| Att. Poss. Liq. PCP – DCSC – 2015-CF2-3658 | 6/21/2016 – 6 months | 4A1.1(b) | 2 |
| Under sentence when committed offense | | 4A1.1(d) | 1 |
| | | | 11 |

Accordingly, Vines' Criminal History Category is to be V (the "Estimated Criminal History Category").[2]

Based upon the Offense Level and the Criminal History Category set forth above, Vines' Sentencing Guidelines range is 37 months to 46 months. In addition, the parties agree that pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 15, the applicable fine range is $7,500 to $75,000.

---

[2] The conviction in D.C. Superior Court Case 2015-CF2-3658 was not included in the estimated criminal history calculation included in the plea agreement. This was an oversight. However, the plea agreement states, "Your client acknowledges that after the pre-sentence investigation by the United States Probation Office, a different conclusion regarding your client's criminal convictions and/or criminal history points may be reached and your client's criminal history points may increase or decrease." *See* ECF No. 85 at 3. Probation correctly included this offense in its calculation, *see* ECF No. 92, and therefore, Mr. Vines should be in Criminal History Category V.

### III. The 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(6).

Due to the severity of Vines' criminal history and convictions, as well as the seriousness of smuggling fentanyl and cellular devices used to obstruct justice into the jail, the government believes that the factors support the court issuing a sentence at the top of the sentencing guidelines to run consecutively with his other criminal sentences.

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

Mr. Vines' offense was undoubtedly serious. Bringing controlled substances into an environment with a high population of individuals with substance-abuse problems can have devastating effects. Additionally, while the phones smuggled into the jail may appear relatively innocuous, in this case, they were anything but. The evidence in this case suggests that Mr. Freshley used one of the contraband cellphones to intimidate witnesses during Vines' murder trial before Judge Friedrich in 19-CR-166 (DLF). This and other threats to witnesses made throughout the case led to a significant increase in security at the courthouse and substantial work on the part of law enforcement to ensure the safety of the witnesses.

Not only did the defendant's actions endanger the lives of his fellow detainees and obstruct justice, but he callously disregarded the well-known risks of fentanyl trafficking. It has been well

documented that fentanyl is a highly potent substance, able to be lethal in doses as little as two milligrams. According to the CDC, synthetic opioids like fentanyl are the primary driver of overdose deaths in the United States. *See* DEA, Facts about Fentanyl (Comparison between 12 months-ending January 31, 2020, and the 12 months-ending January 31, 2021).[3]  Despite the notoriety of the dangers of fentanyl, deaths from it remain incredibly high. Indeed, roughly 44,722 people in the United States died from overdose on synthetic opioids such as fentanyl in the 12-month period ending in February 2025. *See* CDC National Center for Health Statistics, *Provisional Drug Overdose Death Counts*.[4] This national crisis has inflicted particularly great harm upon the D.C. community: in 2023, D.C. had the second highest opioid mortality rate in the country, compared to the states. *See* KFF, *Opioid Overdose Death Rates and All Drug Overdose Death Rates per 100,000 Population (Age-Adjusted)* (2023 timeframe).[5] Despite the well-publicized fentanyl overdose epidemic, the defendant chose to disregard the risks and traffic fentanyl into a facility of particularly vulnerable people. As previously referenced, D.C. Jails are particularly vulnerable to drug abuse as an audit revealed that during the period of Vines' offense the rate of overdose deaths at the facilities were 10 times the national average at U.S. jails. Ex. 1. Accordingly, this factor favors a sentence at the top of the applicable guidelines range.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

Given Mr. Vines' life sentences he is serving in relation to the kidnapping and murder case, the value of specific deterrence is unclear. However, the smuggling of contraband into DOC facilities is a significant problem. There are at least three other active cases in this courthouse involving the smuggling of controlled substances into the jail. *See* 25-CR-213 (ABJ); 25-CR-87

---

[3] https://www.dea.gov/resources/facts-about-fentanyl.
[4] https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm.
[5] https://www.kff.org/other/state-indicator/opioid-overdose-death-rates.

(TSC); 24-CR-385 (TSC). CDF is an insulated environment where the Court's sentence will have a general deterrent effect. Detainees should know that smuggling dangerous contraband into a DOC facility will result in a significant sentence that will run *consecutive* to any offense that resulted in their detention in the first instance.

### C. The History and Circumstances of the Defendant

On August 19, 2024, Mr. Vines was found guilty of the brutal kidnapping and murder of Kerrice Lewis and Armani Coles. Ms. Lewis and Mr. Coles were abducted at gun point, forced into vehicles, driven around the city, and then killed. With respect to Ms. Coles, she was trapped in the trunk of a sedan for more than 90 minutes before Mr. Vines and his co-conspirators opened the trunk and shot her numerous times before setting the car on fire with her inside. The facts are simply horrific.[6]

While awaiting trial in that case, Mr. Vines began the scheme to smuggle contraband into CDF. Furthermore, once the trial began, Mr. Vines' co-conspirator Mr. Freshley used one of the contraband cellular phones smuggled in unwittingly by Officer Kinard to obstruct justice.

This factor weighs heavily in favor of a sentence at the top of the applicable guidelines range.

### IV.   Pursuant 18 U.S.C. § 1791(c), Vines' sentence should run consecutively.

In this case, Mr. Vines has been convicted of conspiring to smuggle, among other things, a Schedule II Narcotic into CDF, in violation of 18 U.S.C. § 371. Although Mr. Vines was convicted of Conspiracy, the object of the conspiracy was to possess contraband in a prison, in violation of 18 U.S.C 1791(a)(2). Pursuant to 18 U.S.C. § 1791(c), "[a]ny punishment imposed . . . for a violation of this section by an inmate of a prison shall be consecutive to the sentence being

---

[6] More details on Mr. Vines' offense can be found in the government's sentencing memorandum from that case. *See* 19-CR-166 (DLF), ECF No. 203.

served by such inmate at the time the inmate commits such violation." It is clear from the text of the statute that there was a legislative intent that inmates possessing contraband should be subject to *additional* penalties. There is little, if any, deterrent effect if an inmate is just sentenced to concurrent time to that which they are already serving. There would be no disincentive to commit the crime. Here, although Mr. Vines is convicted of conspiracy, a consecutive sentence serves the interests of sentencing and is consistent with Congressional intent for punishment of Mr. Vines' actions.

## **CONCLUSION**

The Court should sentence Vince to 46 months in prison to run consecutive with his other sentence.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

 /s/ *Joshua Gold*
Joshua Gold
Tx Bar No. 24103101
Sarah Santiago
GA Bar No. 724304
Assistant United States Attorneys
United States Attorney's Office for D.C.
601 D Street NW,
Washington, D.C. 20530
E-mail: Joshua.Gold@usdoj.gov
Telephone: (202) 815-8965